AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

**United States of America**

v.

Case No. 20-mj-1054

**Arshdeep Singh**

*Defendant*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### Count 1

On or about June 5, 2020, in the Western District of New York, the defendant ARSHDEEP SINGH, did knowingly, intentionally, and unlawfully possess with the intent to distribute 100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

### Count 2

On or about June 5, 2020, from the country of Canada, the defendant, ARSHDEEP SINGH, did intentionally and knowingly import into the United States marijuana, a Schedule I controlled substance. All in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

MICHAEL J. DOMBEK
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

Sworn to before me and signed telephonically.

Date: __June  6 , 2020__

_____

City and State: __Buffalo, New York__

HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

**AFFIDAVIT**

STATE OF NEW YORK )
COUNTY OF ERIE ) SS:
CITY OF BUFFALO )

**MICHAEL J. DOMBEK**, having been first duly sworn, states as follows:

1.      I am employed as a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Buffalo, New York and have been so employed in that capacity since June 2003. Prior to my appointment in the HSI Buffalo Office, I was employed by the United States Customs Service as an Import Specialist, where I was tasked with conducting appraisals and valuations of imported merchandise, in addition to assisting in investigations related to commercial fraud. I am currently assigned to the HSI Buffalo Border Enforcement and Security Task Force ("BEST"), an HSI sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement officers co-located in Buffalo, New York and tasked with combatting transnational criminal organizations ("TCOs") exploiting vulnerabilities of the shared international border. As such I am a law enforcement officer of the United States, within the meaning of Section 115(c) (1) of Title 18, United States Code, who is "authorized by law or by Government agency to engage in or supervise the prevention, detection, investigation or prosecution of any violation of Federal criminal law." Furthermore, per the Interagency Cooperation Agreement between the Drug Enforcement

Administration ("DEA") and ICE/HSI, I am a cross-designated agent authorized to investigate violations of Title 21, United States Code.

2.    I make this affidavit in support of a criminal complaint charging **ARSHDEEP SINGH** ("SINGH"), with violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B), possession of marijuana with intent to distribute, and Title 21, United States Code, Section 952(a) and 960(a)(1), importation of marijuana.

3.    The statements contained in this affidavit are based on my involvement in this investigation, as well as information provided to me by other law enforcement officers in this investigation. Because this affidavit is being submitted for the limited purpose of seeking a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause to believe that **SINGH** knowingly violated Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 952(a).

## PROBABLE CAUSE

4.    On June 5, 2020, at approximately 2:07 a.m., a commercial truck bearing Prince Edward Island, Canada license plate P4287, was encountered at the Peace Bridge Port of Entry, within the Western District of New York, attempting to make entry into the United States. The commercial truck was operated by **ARSHDEEP SINGH**. An ACE electronic manifest was presented for the shipment, indicating that it contained 24 skids[1] of coffee

---

[1] A skid is a platform upon which commercial goods are placed in a bulk quantity for transportation

makers. Additional entry documentation lists the shipper as 2423561 Ontario Limited at 577 Glengrove Avenue Toronto, Ontario, Canada. The listed consignee for the shipment was Amazon.com Services Inc. at 21 Roadway Drive Carlisle, PA 17015.

5.     The commercial truck was referred to VACIS (Vehicle and Cargo Inspection System) for a non-intrusive x-ray exam. CBP Officers conducting the VACIS exam indicated that the x-ray showed inconsistencies between the cargo in the nose of the trailer (the front of the trailer furthest from the trailer door) and that of the rest of the load. Further, during the VACIS exam Officers observed that the trailer did not have a commercial seal securing the back doors. Based on the results of the VACIS examination the commercial truck was referred to the Peace Bridge warehouse loading dock for a physical exam.

6.     During the initial physical exam CBP Officers observed and offloaded the cargo. Towards the rear of the trailer (the part closer to the trailer door), CPB offloaded the properly manifested coffee makers contained in boxes that were wrapped in black shrink wrap. Located in the nose of the truck were seven (7) wooden crates placed on top of four (4) skids. These four (4) skids differed from the rest of the load in that they contained crates, as opposed to boxes, and were not shrink wrapped. Inspection of the crates revealed coffee grounds. Secreted under the coffee grounds were vacuum sealed bags containing a green leafy substance. The green leafy substance was tested utilizing Duquenois-Levine Reagent #908, which revealed a positive test for the presence of marijuana. Approximately 1,608

---

in a commercial tractor-trailer for the purpose of loading, off-loading, moving, and temporary storage of such goods.

3

vacuum sealed bundles of suspected marijuana were removed from the original shipment containers and placed into 99 CBP evidence boxes and securely sealed/labeled. The total weight of the suspected marijuana was approximately 1789.95 pounds (approximately 811 kilograms).

7. Subsequent to the discovery of the suspected marijuana, **SINGH** was interviewed by HSI Special Agents. **SINGH** was given his <u>Miranda</u> Statement of Rights and signed and initialed a waiver form, indicating his consent to speak with agents. **SINGH** stated that he is currently hauling for Trans King, based out of Brampton, Ontario. **SINGH** stated that he was transporting coffee makers and that he was supposed to deliver the load in Pennsylvania by 3:00 p.m. SINGH stated that prior to arriving at the border he picked up the trailer at the Trans King yard located at 72 Oremba Road, Brampton, Ontario Canada. **SINGH** stated that he then drove to Niagara on the Lake to print out his manifest. After printing out the manifest **SINGH** stated that he proceeded to the Peace Bridge Port of Entry and presented himself for inspection. **SINGH** stated that he observed that there was no seal on the back of the trailer. **SINGH** stated that he didn't know why there wasn't a seal. **SINGH** stated that it wasn't his responsibility to check the back and that he didn't verify the contents or the amounts in the trailer.

8. Based on my training, experience, and conversations with other law enforcement officers, I am familiar with standard procedures of the commercial transportation business. One specific conversation was with the group supervisor (GS) Jack Waugaman III for the HSI Buffalo Border Enforcement Security Task Force (BEST). GS

4

Waugaman III has been a law enforcement officer with HSI and the legacy agency since 1997. In that time, GS Waugaman III led and supervised numerous investigations regarding drug smuggling through ports of entry conducted by foreign based transportation cells utilizing commercial tractor trailers. In addition, GS Waugaman III was a certified HSI undercover operative who received basic, intermediate, and advanced undercover training; operated domestically and foreign in an undercover capacity; and led the working group that revamped HSI's national undercover program. As an undercover operative, GS Waugaman III received a class A certification to operate commercial vehicles, including tractor trailers. Based on his undercover training, commercial certification, investigative experience, conversations with other undercover operatives in commercial transportation; conversations with professionals in the commercial transportation industry, interviews with defendants from the commercial transportation industry, and conversations with sources of information in the transportation industry, GS Waugaman III understands the basic responsibilities of "drivers" performing the duties of an over the road commercial transportation driver.

9.     One of the basic responsibilities for a driver of a commercial tractor-trailer is for the driver to ensure the goods are properly loaded, secured, and accounted for. The manner in which goods are loaded onto a trailer directly impacts the safety of the driver and the vehicle, in that if a trailer is loaded with substantially heavier goods to the rear (near the trailer doors), it can cause a "fish-tail" effect on the operation of the vehicle, leading to vehicular accidents. With an unsealed trailer, such as in this case, a legitimate driver would not leave the dock unless the trailer was loaded correctly. It is a normal practice to ensure that the distribution of goods in a trailer is safe before departing. It is also normal practice to

5

ensure that items are secured correctly before departing. With an unsealed trailer, it is also important for a driver to verify the number of skids in the trailer. It is also typical for a driver to browse the goods on a skid to ensure it is consistent with the manifest. These are normal precautions taken by legitimate drivers to ensure they are not accepting "shorted" loads, so they are not held accountable for missing product.

10. No trackers or other monitoring devices were discovered in the load, which indicates to your Affiant that the criminal organization was not electronically monitoring the load and must have had some trust that it would reach the intended destination. Your affiant believes this point is further emphasized with the fact that the contraband is conservatively valued at approximately $2.55 million dollars. In my training and experience, and based on conversations with other law enforcement officers, a criminal organization involved in the smuggling of controlled substances would not risk $2.55 million dollars on a driver who neither knows where to bring the illicit packages, nor could be trusted not to call law enforcement should the packages be discovered. In addition, had **SINGH** actually gone straight to Amazon to deliver the goods, the marijuana would have been immediately detected at that time; yet another risk a criminal organization such as this would not take with such a valuable load.

11. Subsequent to the interview of **SINGH**, HSI Special Agents interviewed a point of contact for the shipper, 2423561 Ontario Limited. The contact stated that he, his business partner, and a loader packaged the shipment personally. He described the skids all being uniform and universally wrapped with black shrink wrap. He stated that none of the skids he

packed contained wooden crates. After packaging the load, the contact stated that the trailer was released from his warehouse in Concord, Ontario to a driver from Trans King. The contact provided the FBA number, described as an Amazon reference number, for which Amazon could track and verify the shipment.

12.     HSI Special Agents also interviewed a representative for Amazon.com Services Inc. The representative was given the FBA number provided by 2423561 Ontario Limited and stated that the order was associated with 1,086 units of coffee makers, waffle makers and expresso makers. The representative stated that the shipment was scheduled for delivery in Carlisle, PA on Monday June 8, 2020 at 7:00 a.m. The representative further stated that shipments entering the yard in Carlisle were only processed per an appointment. The representative stated that there was no appointment for this load on June 5, 2020.

7

## CONCLUSION

13.     Based upon the foregoing, I respectfully submit that I have probable cause to believe that **ARSHDEEP SINGH** has violated Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B), possession of marijuana with intent to distribute, and Title 21, United States Code, Section 952(a) and 960(a)(1), importation of marijuana

_____
MICHAEL J. DOMBEK
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me telephonically

this __6__ day of June, 2020.

_____
HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge

8